UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BULLOCK,

       *Plaintiff*,

   v.

HANA SECURITY SERVICES, *et al.*,

       *Defendants*.

No. 22-cv-2608 (DLF)

**MEMORANDUM OPINION**

Hana Industries, Inc. ("Hana") fired Michael Bullock from his job as a security guard. Bullock sued Hana, Hana employees Sam Estes and Ronald Best (collectively, the "Hana defendants"), and several other defendants. Before the Court is the Hana defendants' motion to dismiss, Dkt. 90. For the reasons that follow, the Court will grant in part the defendants' motion.

**I.    BACKGROUND**

Bullock worked for Hana as a security guard. Second Am. Compl. at 7, Dkt. 47. Hana fired him on April 13, 2022, claiming he bullied and threatened coworkers. *Id.* According to Bullock, Hana fired him because of his race. *Id.*

Hana then submitted a claim regarding Bullock to the Federal Protective Service ("FPS") within the Department of Homeland Security, causing Bullock to lose his job with another employer and rendering him ineligible to work as a security guard at federal facilities. *Id.*

Bullock sued Hana, two Hana employees, and the FPS's Division Director. *Id.* at 2–3. His complaint seeks damages against Hana and its employees for racial discrimination under Title VII and for defamation and intentional infliction of emotional distress under D.C. law; and against the FPS Director for "[b]reach of duty," negligence *per se*, and negligent infliction of emotional

distress. *Id.* at 7–17. It also seeks vacatur of FPS's revocation of his suitability determination under the Administrative Procedure Act, 5 U.S.C. §§ 551–559 ("APA"). *Id.* at 10, 16. After the Court quashed Bullock's service attempts, Bullock filed new affidavits of service.[1] The defendants separately moved to dismiss. *See* FPS Director's Mot. to Dismiss, Dkt. 95; Hana Defs.' Mot. to Dismiss, Dkt. 90. The Court denied the FPS Director's motion to dismiss for improper service of process, quashed service, and granted Bullock additional time to serve the FPS Director. Minute Order of October 30, 2024. The Hana defendants move to dismiss for improper service and failure to state a claim.

## II.   LEGAL STANDARDS

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "Although district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983); *but cf. Morrisey v. Mayorkas*, 17 F.4th 1150, 1157–60 (D.C. Cir. 2021) (holding that district court did not abuse its discretion in dismissing a complaint under Federal Rule of Civil Procedure 4(m) when plaintiff failed to show good cause for noncompliance with service requirements). In such cases, the court should quash service and instruct the plaintiff to try again. *See, e.g.*, *Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012).

---

[1] Bullock's Second Amended Complaint also states a claim against his union. The Court previously dismissed his claims against the union under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Memorandum Op., Dkt. 65. Although Bullock attempted to serve the union following the Court's dismissal, he served the union with the same complaint that the Court previously dismissed. As such, the union had no obligation to respond to Bullock's already-dismissed claims.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To defeat a motion under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court construes *pro se* complaints "liberally," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but even a *pro se* complaint must "plead factual matter that permits [a] court to infer more than the mere possibility of misconduct," *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (cleaned up).

### III.   ANALYSIS

#### A.   Insufficient Service of Process

One Hana employee, Ronald Best, argues once again that Bullock has failed to properly serve him. Bullock filed an affidavit of service from a process server who testified he served an agent authorized to accept service on behalf of Best at his workplace, the IRS building. Dkt. 77. Although the affidavit attests that the third party was Best's agent, it contains no declaration or signed affirmation from the alleged agent, *id.*, and Best filed his own declaration testifying that he did not know this person and never authorized anyone to accept service on his behalf, *see* Mot. to Dismiss Ex., Dkt. 90-3. Other than his explanation of the general procedure at the IRS building, *see* Pl.'s Opp'n at 2, Dkt. 92, Bullock offers no basis for the Court to conclude that Best authorized the third party to receive service on his behalf. Thus, Best has not been properly served.

The Court warned Best of his obligation to "avoid unnecessary expenses" associated with service, Fed. R. Civ. P. 4(d)(1). *See* Minute Order of April 3, 2024. Despite being on notice both of Bullock's claims and his obligations to avoid unnecessary expense, Best insists on service. At the same time, the Court has given Bullock multiple opportunities to serve Best and has cautioned Bullock that diligent attempts at service were necessary. *See* Minute Order of May 1, 2024; Minute

3

Order of May 15, 2024.  Because Bullock has had sufficient warning and opportunity to properly serve Best, the Court will dismiss Best from the case.

### B.  Failure to State a Claim

The Hana defendants argue Bullock's three remaining claims[2]—defamation, intentional infliction of emotional distress, and racial discrimination—should all be dismissed for failure to state a claim.  The Court will take each in turn.

#### 1.  *Defamation*

To state a claim for defamation a plaintiff must allege: (1) "that the defendant made a false and defamatory statement concerning the plaintiff"; (2) "that the defendant published the statement without privilege to a third party"; (3) "that the defendant's fault in publishing the statement amounted to at least negligence"; and (4) "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."  *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999).  "Falsity and defamatory meaning 'are distinct elements of . . . defamation and are considered separately.'"  *Carpenter v. King,* 792 F. Supp. 2d 29, 34 (D.D.C. 2011) (quoting *White v. Fraternal Order of Police,* 909 F.2d 512, 520 (D.C. Cir. 1990)).  Hana takes issue with the first prong.  At this stage, Bullock has alleged enough for his claim to survive.

---

[2] At various points in his opposition briefing, Bullock appears to hint at an unfair labor practice claim in violation of the National Labor Relations Act, 29 U.S.C. §§ 157, 158, and to reference a claim under the D.C. Human Rights Act, D.C. Code §§ 2–1401.01 *et seq*.  But Bullock did not raise either claim in any of his complaints.  Because he only mentions them in passing in his brief and does not appear to be raising them as separate claims, the Court will not consider the merits of either.

Bullock alleges that Hana defamed him by reporting that he bullied and intimidated a coworker.[3]  Second Am. Compl. at 7.  Hana responds that the report was its own protected opinion supported by disclosed facts, was substantially true, and lacked defamatory meaning.  Mot. to Dismiss at 10–15.  None of these arguments prevail.

First, although it is true that merely calling someone a "bully" may be an opinion, *Couch v. Verizon Communications Inc.*, 105 F.4th 425, 435 (D.C. Cir. 2024), reporting that someone engaged in "specific acts of harassment" is a factual statement, *id.*  Here, Hana's defamatory statement appears to be based on specific instances between Bullock and a coworker.  Because it is based on specific acts, rather than general assessments, the statement is fact, not opinion.  *Id.*

Next, Hana argues that its allegedly defamatory statement was substantially true.  Mot. to Dismiss at 12–13.  Drawing all plausible inferences in Bullock's favor, the Court disagrees.  Bullock alleges that his coworker—the one Bullock was accused of bullying—confirmed he was never bullied or intimidated.  Second Am. Compl. at 7.  Although someone could be the object of bullying and not feel bullied, *see* Mot. to Dismiss at 12, it is reasonable to infer that the coworker's impression of the exchange with Bullock could disprove Hana's assessment that he was bullied and intimidated.  For example, if the evidence reveals that Bullock and his coworker had a calm, respectful conversation about work responsibilities, and Hana reported that conversation as an instance of bullying and intimidation, a jury could conclude that Hana's claim was verifiably false.

---

[3] The second allegedly defamatory statement—that Bullock got into an argument with a coworker while he was armed and the coworker was unarmed—is not defamatory because it is substantially true.  Bullock only disputes that his coworker was unarmed.  Second Am. Compl. at 7 (alleging that his coworker at the time held an unloaded weapon in one hand and a magazine with ammunition in the other).  Because he fully admits that he was armed when he engaged in a heated argument with his coworker, the "sting of the charge" is substantially true.  *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 108 (D.D.C. 2009); *see Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

Finally, accusing someone of bullying and intimidation is capable of defamatory meaning. "A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). Bullock alleges that the statement not only injured him in his trade, but also caused him to lose his job and eligibility for future employment. Second Am. Compl. at 7. Thus, Bullock states a claim for defamation.

2. *Intentional Infliction of Emotional Distress*

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (cleaned up). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 76 (D.D.C. 2018) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010)). Rather, "[t]he conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Tulin*, 994 A.2d at 800). "Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016).

The extent of Hana's conduct is allegedly defaming Bullock to FPS. That action bears no resemblance to the conduct alleged in cases where courts have previously recognized intentional infliction of emotional distress claims. *See, e.g.*, *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 863 (2010) (supervisor defendant repeatedly sexually touched and harassed

plaintiff, propositioned her, and made vulgar comments about her to others). Indeed, even interfering with an employee's ability to perform his job, firing the employee, and making false statements about the employee does not rise to the level of outrageous conduct. *See Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991). The Court will therefore dismiss Bullock's intentional infliction of emotional distress claim.

        3.    *Title VII*

Bullock brings his Title VII racial discrimination claim against Hana and two Hana employees. Title VII "does not allow for suits against individuals in their personal capacities." *Thomas v. WMATA*, 305 F. Supp. 3d 77, 87 n.4 (D.D.C. 2018). Because claims against individual supervisors in their official capacities are redundant of and "merge with" claims against the company, the Court will dismiss Bullock's Title VII claims against the individual defendants. *Id.* at 87. Hana argues Bullock's Title VII claim is time-barred and fails on the merits.

        i.    Timeliness

Title VII allows a complainant to bring suit "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or unit ... or by the [EEOC] upon an appeal from a decision." 42 U.S.C. § 2000e-16(c); *see also Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (explaining that Title VII's administrative deadlines "function like a statute of limitations"). Although "[c]ourts apply the ninety-day time limit strictly," *McAlister v. Potter*, 733 F. Supp. 2d 134, 142 (D.D.C. 2010), Title VII's statutory deadline is "subject to waiver, estoppel, and equitable tolling," *Brown*, 777 F.2d at 14 (cleaned up). Here, Bullock's notice from EEOC was dated December 5, 2022. Second Am. Compl. at 18. Bullock did not file his proposed Second Amended Complaint until 108 days later, on March 23, 2023. Dkt. 46-1. Thus, Bullock's claim can only go

forward if subject to equitable relief. Bullock argues the deadline should be equitably tolled, and the Court agrees.

The Supreme Court has explicitly condoned "equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Here, Bullock first filed a motion to amend his complaint to incorporate his Title VII claims on February 24, 2023. Dkt. 45. The Court denied the motion as defective for failing to comply with Local Rule 7(i) and Federal Rule of Civil Procedure 15(a), Minute Order of March 2, 2023, and gave Bullock until March 23, 2023, to refile his motion, *id*. That defective pleading, which put defendants on notice of Bullock's Title VII claim, was within the 90-day time limit. Courts in this district have tolled the time limit when a plaintiff waited to obtain leave from the court before filing an amended complaint. *Est. of Thomas v. Southworth, Inc.*, No. 99-cv-712 (CKK), 2002 WL 34696375, at *4 (D.D.C. Jan. 24, 2002). Because Bullock attempted to comply with the 90-day statutory deadline and because the defendants were on notice of the Title VII claim before the deadline lapsed, the Court will equitably toll the time and consider the Title VII claim on the merits. *See Turner v. Shinseki*, 824 F. Supp. 2d 99, 111 (D.D.C. 2011); *Robinson-Smith v. Gov't Emps. Ins. Co.*, 424 F. Supp. 2d 117, 122 (D.D.C. 2006).

      ii.  Merits

To state a disparate treatment claim under Title VII, a plaintiff must plausibly allege that "(i) [he] suffered an adverse employment action (ii) because of [his] race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). Bullock claims he was fired because of his race, and points to a white coworker who was not fired despite "repeatedly violat[ing] company policy." Second Am. Compl. at 7. "[A]n employment

discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011). At this stage, Bullock has done enough for his claim to survive.

To show indirect discrimination, a plaintiff can point to "other employees of a different race" who were treated "more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up). Hana claims Bullock has failed to show that his comparator was similarly situated in all relevant aspects. Mot. to Dismiss at 20. The Court disagrees. According to the complaint, both Bullock and his comparator had the same job: Protective Security Officers. *See* Second Am. Compl. at 7. Both Bullock and his comparator were subject to the disciplinary authority of the same supervisors. *See id.* at 13–14. And both Bullock and his comparator committed similar offenses. Bullock was fired because he "bull[ied] and intimidate[ed]" one coworker and "got into an argument" with another coworker. *Id*. at 7. His coworker allegedly "harass[ed] and intimidate[d]" multiple coworkers. *Id*. at 13. Thus, plaintiff alleges they violated the same company policy through similarly serious actions.

In response, Hana points out apparent inconsistences in Bullock's complaint. Mot. to Dismiss at 20. Even if these possible inconsistencies may prove dispositive at a later point, at this stage, the Court must draw all plausible inferences in Bullock's favor, *Twombly*, 550 U.S. at 570, construing his pro se complaint generously, *Estelle*, 429 U.S. at 106. Because Bullock has plausibly alleged that he and his comparator were similarly situated in all relevant respects, he has stated a Title VII claim of racial discrimination.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' motion to dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

January 10, 2025