**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL BULLOCK,<br>*Plaintiff*,<br>v.<br>HANA SECURITY SERVICES, *et al.*,<br>*Defendants.* | No. 22-cv-02608 (DLF) |

**MEMORANDUM OPINION**

After Michael Bullock was fired from his job as a security guard with Hana Industries, Inc., the Federal Protective Service, a division within the Department of Homeland Security, determined that Bullock was unfit to work on Federal Protective Service contracts. Bullock, acting pro se, filed this action against the Service's director as well as his former employer, alleging, among other things, that the Service's fitness determination violated the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. Before the Court are Bullock's motion for summary judgment, Dkt. 128, and the Service's cross-motion for summary judgment, Dkt. 131. For the reasons that follow, the Court will deny Bullock's motion and grant the Service's cross-motion.

## I. BACKGROUND

Michael Bullock worked as a security guard for Hana Industries, Inc. (Hana), which was contracted to perform security work for the Federal Protective Service (Service). Second Am. Compl. 7, Dkt. 47. In 2022, Hana terminated Bullock and reported the employment action to the Service. *Id.*; Administrative Record (AR) 1, 9–11, Dkt. 127-1. On June 22, 2022, the Service sent Bullock a letter notifying him that Hana's report, together with several prior adverse employment actions, could result in a determination that he was unfit to work on Service contracts. AR 9–11.

The letter gave Bullock 15 days to respond with any comments or documentary evidence, but he did not respond within that period. *Id.* at 9, 13. On July 11, 2022, the Service issued Bullock an unfavorable fitness determination, identifying eight reasons for its decision under 5 C.F.R. § 731.202(b). *Id.* at 13–14.

Bullock appealed the Service's fitness determination and submitted supporting documentation in his defense. *Id.* at 16–73. On July 21, 2022, the Service issued a letter denying that appeal and affirming its unfavorable determination. *Id*. at 74. Bullock then filed suit against Hana and the Service. *See* Compl., Dkt. 1; Second Am. Compl., Dkt. 47.

Bullock initially asserted four claims against the Service: breach of contract, negligence per se, negligent infliction of emotional distress, and violation of the APA. Second Am. Compl. 10–11. The Court dismissed the first three claims for lack of subject-matter jurisdiction and remanded the APA claim to the Service for further proceedings. Mem. Op. & Order at 3–5, 7, Dkt. 115. The Court explained that remand on the APA claim was necessary because the Service's "entire analysis [was] contained in one sentence," leaving the Court "with no way to assess the Service's reasoning." *Id.* at 5–6. The Court thus directed the Service to reconsider its decision "in light of the additional evidence Bullock presented," while taking "no position on what decision the Service may reach upon remand." *Id.* at 7.

The Service issued a seven-page decision on remand that reviewed each of the eight concerns identified in the original determination in light of Bullock's responses and supporting evidence. AR 1–7. The Service withdrew Counts 1 and 2, sustained Counts 3, 4, and 5, and found that Counts 6, 7, and 8 were mitigated. *Id.* at 6–7. The Service sustained the unfavorable fitness determination because it concluded that Bullock's conduct with respect to Counts 3–5, together with other employment issues, demonstrated a pattern of misconduct or negligence that called into

question his "judgment, reliability, honesty, and willingness to follow rules or regulations." *Id.* at 6.

Bullock then renewed his motion for summary judgment, Dkt. 128, and the Service opposed and cross-moved for summary judgment, Dkts. 130, 131.

## II. LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citations omitted). The Court will "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or "unsupported by substantial evidence," *id.* § 706(2)(E).

In an arbitrary and capricious challenge, the core question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983); *see also Nat'l Telephone Co-op. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that

agency rules be reasonable and reasonably explained."). The court's review is "fundamentally deferential—especially with respect to matters relating to an agency's areas of technical expertise." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012) (internal quotation marks and alteration omitted). The court "is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted). When reviewing that explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal quotation marks omitted). For example, an agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [the explanation] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The party challenging an agency's action as arbitrary and capricious bears the burden of proof. *Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir. 2015) (citation omitted).

The arbitrary and capricious standard of § 706(2)(A) is a "catchall" that generally subsumes the "substantial evidence" standard of § 706(2)(E). *See Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense . . . .") (citations omitted); *accord Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007).

## III. ANALYSIS

The Court construes Bullock's motion for summary judgment as raising two arguments under the APA. First, he contends that the Service's revised fitness determination was arbitrary and capricious. Second, he argues that he was entitled to a hearing under 5 U.S.C. §§ 554 and 556. Neither succeeds.

### A. Arbitrary and Capricious Review

Bullock first contends that the Service's fitness determination was arbitrary and capricious because its findings on Counts 3, 4, and 5 were not supported by the evidence. In reviewing factual determinations, the Court is "highly deferential to the agency fact-finder" and will not disturb its conclusions when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citation modified); *see also State Farm*, 463 U.S. at 43 (explaining that a court may not substitute its judgment for the agency's or reweigh the evidence). The Service's findings on Counts 3, 4, and 5 satisfy that standard.

Count 3 charged Bullock with dereliction of duty and dishonesty for failing to secure doors on January 14 and 22, 2022, and for failing to generate or retain the required security forms. AR 2. In support, Hana provided evidence that Bullock failed to secure the doors or complete the forms as required, admitted in a conversation that he had forgotten to secure the doors, and later stated that he was unaware that the doors needed to be secured. *Id.* at 2, 11. For his part, Bullock acknowledged that the doors might have been "left open" on January 14 but maintained that they were secured on January 22. *Id.* at 2, 41. He also asserted that he had completed the security forms on both dates but that they had been misplaced, which he argued was common and not a basis for termination. *Id.* The Service considered Bullock's competing account and concluded

that it was "more likely true than untrue that [he] failed to secure the doors as mandated on January 14 and 22, 2022, and failed to generate and/or retain the [security forms] as required." *Id.* at 6. In light of Hana's evidence, that conclusion has adequate support in the record. Bullock's disagreement with the Service's resolution of the conflicting evidence does not establish that the finding was unsupported. *See Morall v. DEA*, 412 F.3d 165, 177 (D.C. Cir. 2005). Nor does Bullock's assertion that he had never seen a security officer terminated for similar conduct undermine that conclusion, as the assertion concerns Hana's disciplinary practices, not whether the Service reasonably concluded that the underlying conduct occurred. And the fitness inquiry focuses only on the "*individual's* character [and] conduct," 5 C.F.R. § 731.101(a)(3) (emphasis added); none of the enumerated factors require the Service to weigh whether an employer reported other employees for comparable conduct, *see id.* § 731.202(b).

Count 4 charged Bullock with violence in the workplace for arguing with another security officer while armed on January 29, 2022. AR 2–3. Bullock did not dispute that the confrontation occurred, *id.* at 18, or that he was armed, *id.* at 50. Instead, Bullock argued that the other officer instigated the interaction by being disrespectful, that Bullock attempted to defuse the situation, and that video surveillance and statements from other employees supported his account. *Id.* at 3, 18–19. Hana, by contrast, reported that the other officer attempted to separate himself from the verbal altercation while Bullock followed him into the hallway and continued it. *Id.* at 2–3. The Service expressly considered Bullock's contrary evidence and nonetheless found that Bullock was "the primary aggressor" during the altercation. *Id.* at 3, 6. That some of the evidence may support Bullock's account does not render the Service's contrary finding arbitrary. The Service considered the conflicting evidence and resolved it against Bullock, and the Court may not reweigh that

evidence or substitute its judgment for the agency's. *See State Farm*, 463 U.S. at 43.

Count 5 charged Bullock with unbecoming conduct for spreading rumors, accusing and confronting others in an aggressive manner, and bullying. *Id.* at 3–4. Hana reported that Bullock referred to the employees who reported him for failing to lock the doors as "snitches" and "rats" and confronted another officer about reporting him to management. *Id.* at 3–4. Bullock responded that he did not recall the exact words he used, although he acknowledged that he may have voiced concerns about colleagues who reported fellow officers to management. *Id.* at 4, 41. Bullock asserted that such comments were "a regular occurrence akin to locker room talk between officers," *id.* at 41, and submitted statements from other employees who indicated that they did not feel bullied by Bullock, *id.* at 4. The Service considered Bullock's response and nonetheless concluded that the record supported a finding of misconduct. *Id.* at 6. Again, Bullock's contention that the Service "took the word of Hana" over his colleagues' statements, *see* Pl.'s Mot. at 6, Dkt. 128, does not show that the Service failed to consider his evidence or acted unreasonably.

Taken together, the record supports the Service's findings on Counts 3, 4, and 5, as well as its resulting determination that Bullock's conduct, together with other recent employment issues, demonstrated "a pattern of misconduct or negligence" that called into question Bullock's "judgment, reliability, honesty, and willingness to follow rules and regulations." AR 6. Because the Service's decision was supported by the record and "contain[s] a rational connection between the facts found and the choice made," *McKinney v. Wormuth*, 5 F.4th 42, 47 (D.C. Cir. 2021) (citation omitted), it was not arbitrary, capricious, or otherwise contrary to law.

Bullock's two alternative arguments also fail. First, Bullock contends that the Service acted arbitrarily by relying on Counts 6, 7, and 8—which involved conduct predating an earlier favorable fitness determination—in rendering its final decision here. Pl.'s Mot. 3–4. But the

Service did not sustain those counts, expressly stating that it declined to do so on the same equitable grounds Bullock now invokes. AR 7. The Service therefore did not rely on Counts 6–8 as a basis for its unfavorable fitness determination. *Id.* at 6–7.

Second, Bullock contends that the Service failed to consider his evidence of disparate treatment, since another officer was retained despite similar behavior. Pl.'s Mot. at 5. The record, however, shows that the Service considered Bullock's evidence of disparate treatment and declined to credit it. AR 7. Specifically, the Service concluded that "another [security officer's] failure to adhere to policies and their employer's reaction" to that failure was "not material to [Bullock's] ability to follow rules or regulations and [did] not mitigate the concerns raised." *Id.* at 7; *see also id.* at 27, 41, 43–44. Bullock's disagreement with that assessment does not establish that the Service failed to consider his evidence or acted arbitrarily in declining to credit it. Indeed, the applicable regulation focuses the fitness inquiry on the "individual's character [and] conduct," 5 C.F.R. § 731.101(a)(3), and none of the enumerated factors require the Service to weigh whether an employer reported other employees for comparable conduct, *see* § 731.202(b).

Bullock thus has not shown that the Service's revised fitness determination was arbitrary or capricious.

**B. Evidentiary Hearing**

Bullock separately argues that the Service violated the APA by failing to hold an evidentiary hearing before rendering its final decision, invoking §§ 554 and 556. But those provisions apply only to adjudications "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a); *see also R.R. Comm'n of Texas v. United States*, 765 F.2d 221, 228 (D.C. Cir. 1985). The regulations governing the fitness determination do not impose such a requirement. *See* 5 C.F.R. § 731. The formal-adjudication procedures of

§§ 554 and 556 thus do not apply. *See Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017); *see also Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 75 (D.D.C. 2011) (citation omitted) ("[T]he APA does not confer upon participants in informal adjudications the right to present [their] case or defense by oral or documentary evidence, to submit rebuttal evidence, or to conduct such cross-examination as may be required for a full and true disclosure of the facts.").

Bullock further argues that the Service has created a "freestanding scheme to prevent it from being governed by the APA and prevent plaintiff due process." Pl.'s Mot. at 9. The Service, however, does not dispute that the APA applies to Bullock's fitness determination, and this Court has reviewed the agency's determination under the APA. To the extent Bullock means to assert a new Fifth Amendment due process claim, that claim was not pleaded in his complaint and may not be raised for the first time in briefing on summary judgment. *See Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 24 (D.D.C. 2021) ("Nor may a plaintiff, even a pro se one, raise new claims at the summary judgment stage.").

**CONCLUSION**

For the foregoing reasons, the Court will deny Bullock's motion for summary judgment, Dkt. 128, and grant the Service's cross-motion for summary judgment, Dkt. 131. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2026